UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO BOOZER,

                Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

                Defendant.

_____/

Case No. 17-cv-14190

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
Magistrate Judge

## OPINION AND ORDER (1) GRANTING DEFENDANT ENHANCED RECOVERY COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 23) AND (2) DISMISSING PLAINTIFF'S COMPLAINT (ECF NO. 1)

Defendant Enhanced Recovery Company, LLC (ERC), a debt collection agency, dialed the wrong number and called Plaintiff Ricardo Boozer, instead of the third-party debtor, somewhere between eight and twenty times over the course of two months. The parties do not agree on when Mr. Boozer told ERC that it had the wrong number, whether ERC called Mr. Boozer after it learned that his was the wrong number, and what the legal consequences of ERC's actions are. Mr. Boozer claims that ERC's actions violate the federal Fair Debt Collection Practices Act (FDCPA) and the parallel Michigan debt collection laws. ERC denies liability.

Specifically, Mr. Boozer claims that ERC violated the FDCPA sections that bar the following in connection with the collection of debt: communication at

unusual times or places (§ 1692c(a)(1)), communication with third parties (§§ 1692c(b), 1692b), engaging in harassing or abusive conduct (§ 1692d), use of false or deceptive means (§ 1692e), and use of unfair or unconscionable means (§ 1692f). Mr. Boozer also claims that ERC violated the parallel Michigan Occupational Code provisions that bar debt collectors from (1) misrepresenting the legal rights of a creditor or debtor (Mich. Comp. L. § 339.915(f)(ii)), (2) using a harassing, oppressive or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places (Mich. Comp. L. § 339.915(n)), and (3) failing to implement a procedure designed to prevent a violation by an employee (Mich. Comp. L. § 339.915(q)). Discovery has been completed and ERC has filed a motion for summary judgment. For the following reasons, the Court grants ERC's Motion for Summary Judgment and dismisses Mr. Boozer's Complaint.

## I.    FACTS

On November 25, 2013, ERC, having just been hired to collect a T-Mobile debt owed by a third party, used a vendor to find the contact information for the third-party debtor (Debtor). (ECF No. 20-3, Landoll Dec., PgID 124.) The vendor conducted a data scrub that identified a cell phone number ending in 4908 as possibly belonging to Debtor. (*Id.*) That cell phone number did not belong to Debtor, but, instead, belonged to Mr. Boozer. (*See* ECF No. 21-1, Boozer Dep.,

PgID 160.) ERC's records showed other numbers associated with Debtor and ERC initially focused its collection efforts on calling those numbers. (*See* ECF No. 25-6, Davis Dep., PgID 1460.)

In 2017, ERC began calling the 4908 number. The parties argue over the details of the calls—when they began, the total number, the phone number ERC used to make them, how many Mr. Boozer answered and said ERC had the wrong number, and how many times he called back and told ERC that it had the wrong number because he was not Debtor. ERC has produced its internal records (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 131–35), Mr. Boozer has produced his phone records, (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 331–1330), and discrepancies have been revealed between the records and Mr. Boozer's testimony. The following will describe (1) Mr. Boozer's testimony then (2) both sets of records.

Mr. Boozer, in his deposition, testified that he began receiving calls from ERC "looking for a young lady named [Debtor]" in early 2017. (ECF No. 21-1, Boozer Dep., PgID 164, 166.) He said he received "a lot" of calls, estimating that the number was "more than 10" and "maybe 20." (*Id.* at PgID 165.) Mr. Boozer testified that ERC did not identify itself at all when it called looking for Debtor and that he first learned the calls were coming from ERC when he called back. (*Id.* at PgID 164, 169, 171–73.) He said he knew when ERC was calling because "it was

the same number," and that he had even saved that number to his contacts under either the name "[Debtor]" or "debt collector." [1] (*Id.* at PgID 169, 234–35.) Finally, he said that ERC sometimes left voicemail messages looking for Debtor when it called. (*Id.* at 182–83.)

In response to the question of whether he ever spoke with someone at ERC, Mr. Boozer testified that he spoke "several times to different call reps." (*Id.* at PgID 167.) When asked to estimate a number, he said "three, four" times, and that some of these conversations occurred when Mr. Boozer answered an incoming call from ERC and some of them when Mr. Boozer called ERC back. (*Id.*) At other points in his deposition, Mr. Boozer estimated that he placed between two and four total calls to ERC in addition to sometimes answering incoming calls from ERC. (*See id.* at PgID 175, 185, 215–16.)

Mr. Boozer testified that each conversation involved him telling ERC to remove his number because he is not Debtor. (*See id.* at PgID 167, 173, 175–76, 181–82, 188, 189, 190, 215.) In response, the ERC representative would say, according to Mr. Boozer, "[y]es. Thank you, sir. We'll remove you from our list." (*Id.* at PgID 182.) Mr. Boozer insisted that he told ERC "from the first call they ever called" that he was not Debtor and that he should be removed from their list,

---

[1] This differs from the argument Mr. Boozer makes in his Response where he argues, based on a comparison between ERC's records and Mr. Boozer's cell phone records, that more than one number "had to have been used" by ERC to call him. (ECF No. 25, Plaintiff's Response, PgID 295.)

and that he received between ten and fifteen calls from ERC looking for Debtor, all after he conveyed that message. (*Id.* at PgID 173, 178.)

ERC's records date the first call to 4908 as September 23, 2017, at 5:09 PM, and those records indicate that Mr. Boozer did not answer. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133.) According to ERC, the number used to place that call, and all of the calls to Mr. Boozer, was 800-875-5097. (ECF No. 25-2, Plaintiff's Response Exhibit A, PgID 324–25.) Plaintiff's phone records verify that Mr. Boozer received an incoming call from 800-875-5097 at 5:09 PM. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 746.) The "Duration" column for this call is blank and the "Completion Code" column states "Abnormal Completion." (*Id.*)

There are seven additional calls over the period from October 7, 2017 to November 28, 2017 from ERC to Mr. Boozer that both ERC's records and Mr. Boozer's phone records reflect. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133–34; ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 756, 798, 831, 836, 837, 838, 839.) Of these seven calls, ERC indicates that three were not answered and Mr. Boozer's phone records confirm that they were not answered with the same notations in the "Duration" and "Completion Code" columns described above. (*Id.*) Three others are marked as "Machine, No Message Left" in ERC's records, and Mr. Boozer's phone records indicate that these calls were forwarded to his voicemail and had durations of ten, nine, and six seconds, respectively. (*Id.*) Mr.

Boozer contends that the durations indicated on his phone records for these calls show that the ERC records are "inaccurate and fallible" because durations of ten and nine seconds suggest that ERC did leave a message on Mr. Boozer's machine even though ERC's notes say "No Message Left." (ECF No. 25, Plaintiff's Response, PgID 298–99.)

The last call from ERC to Mr. Boozer that is reflected in both ERC's records and Mr. Boozer's phone records is on November 28, 2017 at 1:47 PM. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 134; ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 839.) Mr. Boozer's phone records denote that this call was completed successfully and that it lasted twenty-four seconds. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 839.) ERC's records contain the following notes regarding this call: "1114: tpd mop wrn#," which, it has explained, means "Third Party Man on Phone Wrong Number." (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 134; ECF No. 20-3, Landoll Dec., PgID 125.) ERC has an audio recording of the call, which Richard "Rocky" Landoll transcribed in his declaration. (*See* ECF No. 20-3, Landoll Dec., PgID 125.)[2] ERC records then indicate that this number was removed from the account. (*Id.*)

---

[2] "**ERC Agent:** Good afternoon. My name is Nicky Freeman. Speaking on a record line. Am I speaking to [third party debtor]?
**Plaintiff:** No, you have the wrong number.
**ERC Agent:** Okay, sorry to bother you. I will remove the wrong number, ok?

As far as calls from Mr. Boozer to ERC, ERC records and Mr. Boozer's phone records show one call from the 4908 number to 800-875-5097, on November 28, 2017 at 5:50 PM, which had a duration of 121 seconds. (ECF No. 20-3, Landoll Dec., PgID 125–26; ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 839.) ERC has an audio recording of this call, which Richard "Rocky" Landoll transcribed in his declaration. (*See* ECF No. 20-3, Landoll Dec., PgID 126.) In the call Mr. Boozer says that he had gotten a call from that number earlier, and that he has previously gotten "several calls from this number" and the ERC agent responds by saying that he does not have any information on the 4908 number. (*Id.*) Mr. Landoll said that the agent could not find Mr. Boozer's number in the system because it had already been removed. (*Id.*)

There are three calls in ERC's records that are not reflected in Mr. Boozer's phone records. First, ERC's records show a call to 4908 on September 26, 2017 at 2:35 PM. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133.) Mr. Boozer's phone records do not indicate that Mr. Boozer received an incoming call at 2:35 PM on September 26, 2017 from any number. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 747.) Second, ERC notes a call to 4908 on October 13, 2017 at 5:02 PM. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133.) Mr. Boozer's phone records note two incoming calls from the number "2300" at 5:03 PM that lasted 60

---

**Plaintiff:** Ok, bye.
**ERC Agent:** Okay, bye"

7

seconds and were completed successfully. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 796.) Mr. Boozer's records also show over 100 incoming calls from 2300 on October 13, 2017, each lasting for exactly sixty seconds, and Plaintiffs have not alleged that 2300 belongs to ERC. (*Id.*) Finally, ERC's records list a call to the 4908 number on November 17, 2017 at 2:58 PM. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133.) Mr. Boozer's phone records do not list any incoming calls from any number on that date at that time. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 834.)

The combined records are difficult to square with Mr. Boozer's testimony. Mr. Boozer testified that he spoke with someone at ERC and told that person that he was not Debtor and that ERC had the wrong number, and then he was called ten to fifteen more times by ERC. (*See* ECF No. 21-1, Boozer Dep., PgID 173, 178.) The combined records, however, show that Mr. Boozer received eight calls from 800-875-5097, the only number that either party has identified as belonging to ERC, seven of which went either unanswered or to voicemail, and the last of which Mr. Boozer answered and then explained that ERC had the wrong number. Mr. Boozer's phone records do not list any incoming calls from 800-875-5097 after that conversation.

Mr. Boozer offers the following theory to explain the divergence between his deposition testimony and the records. He presumes that the three calls reflected

in ERC's records that do not appear in Mr. Boozer's phone records were made with a number other than 800-875-5097. (*See* ECF No. 25, Plaintiff's Response, PgID 294–95.) Based on that presumption, he suggests that ERC's records do not "adequately encapsulate the full extent of conversations with Plaintiff," and that the additional calls from ERC to Mr. Boozer, as well as his calls to ERC, were with a different ERC phone number. (*Id.* at PgID 295.) Mr. Boozer does not address the fact that his phone records do not reflect any incoming calls from any number at the times indicated in ERC's records, does not identify any portion of his phone records as corroborating this theory, and does not attempt to explain his deposition testimony that ERC always called from the same number.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must

present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon its mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). At the same time, the non-moving party must produce enough evidence to allow a reasonable jury to find in its favor by a preponderance of the evidence. *Anderson*, 477 U.S. at 252. "The 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. That party cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions," *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008), but must show probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid.* It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558–59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III.    ANALYSIS

### A. No Genuine Dispute of Material Fact

The threshold determination at the summary judgment stage is whether there is a genuine issue as to any material fact. *See Celotex*, 477 U.S. at 322. Plaintiff insists there are "numerous genuine issues of material fact . . . as to the volume of calls placed, the number of conversations Plaintiff had with Defendant, what was said during those calls, and how many times Defendant contacted Plaintiff after becoming aware he was not the intended target of its collection efforts." (ECF No. 25, Plaintiff's Response, PgID 293.) As proof that these issues of fact are genuinely disputed, Mr. Boozer points to the various ways his deposition testimony conflicts with ERC's records and argues that the deposition is probative evidence and that viewing the facts in the light most favorable to the non-moving party requires crediting Mr. Boozer's deposition testimony. (*See id.* at PgID 294–99.) The Court does not agree.

The Supreme Court has made clear that where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

13

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In that case, the blatant contradiction was between the respondent's claim that he was driving carefully and a video that shows respondent driving at "shockingly fast" speeds, running red lights, and otherwise endangering the public with his driving. *Id.* at 379. Here, the contradiction is more mundane, but it is still blatant. Plaintiff testified that he received ten to fifteen calls after he told ERC that it had the wrong number. (ECF No. 21-1, Boozer Dep., PgID 173, 178.) His phone records, which he submitted to the Court in his Response, indicate that he answered only one call from ERC's number, 800-875-5097, on November 28, 2017, after which he never received another call from ERC's number. (ECF No. 25-3, Plaintiff's Response Exhibit B, PgID 746–1001.) ERC's records corroborate Plaintiff's phone records on this fact. (ECF No. 20-4, Landoll Dec. Exhibit 1, PgID 133–34.) Further, Mr. Boozer's confirmed, in his deposition, that he was not aware of any document that corroborated or supported his statement that there were more calls than those reflected in his phone records. (ECF No. 21-1, Boozer Dep., PgID 236.) Therefore, the Court does not adopt Mr. Boozer's account of the facts because it is blatantly contradicted by the rest of the record.

Plaintiff argues that, at the summary judgment stage, "Defendant's records are not entitled to any more presumption of truth than Plaintiff's testimony," and

cites *Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207 (D. Kan. 2016). (ECF No. 25, Plaintiff's Response, PgID 303.) In *Wright*, the District Court refused to grant summary judgment in favor of the defendant where the defendant's records conflicted with the plaintiff's deposition testimony and handmade call log because to do so, in the court's opinion, would be "to make a credibility determination." *Id.* at 1214. Plaintiff is correct that, in general, it is inappropriate for courts to make credibility determinations or to weigh the evidence at the summary judgment stage, but, in situations like this, or like *Scott*, where one party's account of the facts is blatantly contradicted by the record, courts need not blindly accept the contradicted account of the facts. 550 U.S. at 380. These are situations where "the evidence is merely colorable, or is not significantly probative" and therefore summary judgment is appropriate. *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Here, the contradiction between Mr. Boozer's deposition testimony and the phone records that he himself offered into evidence shows that his testimony is merely colorable and therefore insufficient to create a genuine issue of material fact. *Cf. Pugliese v. Prof'l Recovery Serv. Inc.*, No. 09-12262, 2010 WL 2632562, at *6 (E.D. Mich. 2010) ("Plaintiffs cannot create a genuine issue of material fact by simply asserting conclusory statements.").

## B. Fair Debt Collection Practices Act

Plaintiff advances five similar, but separate theories of liability under the FDCPA (15 U.S.C. § 1692a, *et seq.*), a law intended to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). First, he argues that ERC's calls violated §§1692b and 1692c(b). (ECF No. 1, Complaint, PgID 4–5.) Section 1692c(b) bars debt collectors from communicating with third parties in connection with collecting a debt "except as provided in section 1692b," which creates a safe harbor for communications with third parties "for the purpose of acquiring location information about the consumer." 15 U.S.C. §§ 1692b, 1692c(b). Second, he argues that ERC violated § 1692c(a)(1), which bans debt collectors from communicating with "the consumer" at "any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." (ECF No. 1, Complaint, PgID 5–6); 15 U.S.C. § 1692c(a)(1).

Third, Mr. Boozer says ERC violated § 1692d which bans conduct that harasses, oppresses or abuses "any person" by debt collectors, and § 1692d(5) which specifically bans "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or

harass any person at the called number." (ECF No. 1, Complaint, PgID 5–6); 15 U.S.C. §§ 1692d, 1692d(5). Fourth, Mr. Boozer argues that ERC's calls violated § 1692e, the FDCPA's ban on false and misleading representations in connection with debt collection. (ECF No. 1, Complaint, PgID 6); 15 U.S.C. § 1692e. Fifth and finally, Mr. Boozer says that ERC violated § 1692f, which bars debt collectors from using unfair and unconscionable means to collect a debt. (ECF No. 1, Complaint, PgID 6–7); 15 U.S.C. § 1692f.

Defendant ERC moves for summary judgment on two bases. First, it argues that Mr. Boozer does not have standing to bring claims under §§ 1692b and 1692c because § 1692b does not create a private right of action and because Mr. Boozer is not a "consumer" as defined in §1692a of the FDCPA. (ECF No. 23, Motion for Summary Judgment, PgID 275–78.) Second, ERC argues that Mr. Boozer's additional claims are "without merit" because Mr. Boozer has not produced evidence that ERC engaged in harassing, oppressive, deceptive, misleading, unfair or unconscionable conduct toward him. (*Id.* at 278–89.) On § 1692d, ERC argues that the eleven calls its records show that it placed to Mr. Boozer are not harassing, oppressive or abusive as a matter of law. (*Id.* at 278–81.) Regarding §§ 1692e and 1692f, ERC argues that Mr. Boozer's knowledge that ERC was attempting to reach only Debtor means that its conduct was not deceptive or unfair as a matter of law.

### a. § 1692c and Standing

Defendant ERC first argues that it is entitled to summary judgment on Mr. Boozer's claims under §§ 1692b, 1692c(a)(1), and 1692c(b) because Mr. Boozer is not a consumer as defined by the FDCPA and therefore does not have standing to bring a claim under §1692c. (ECF No. 23, Motion for Summary Judgment, PgID 275–77.) The Court agrees.

Sections 1692b and 1692c(b) of the FDCPA work together to prevent debt collectors from contacting third parties as part of their efforts to collect any debt. *See* 15 U.S.C. §§ 1692b, 1692c(b). Section 1692c(b) bars all communication with third parties without the consent of the debtor except for communications that adhere to the requirements of § 1692b. *Id.* Section 1692b allows debt collectors to communicate with third parties "for the purpose of acquiring location information about the consumer" if they follow certain rules, such as subsection (3)'s requirement that debt collectors "not communicate with any such person more than once unless requested to do so by such person." *Id.* Failure to abide by the requirements of § 1692b is not an independent violation of the FDCPA, but is a violation of § 1692c(b). *See Litt v. Portfolio Recovery Associates LLC*, 146 F. Supp. 3d 857, 867 (E.D. Mich. 2015) ("Courts have recognized that § 1692b defines how a debt collector is permitted to communicate with third parties about a 'consumer's' debt, but does not create an independent private right of action.").

18

Therefore, Plaintiff's allegations that ERC "violated § 1692b, b(3), and c(b) by contacting Plaintiff on a number of occasions seeking to collect upon a debt owed by an unknown individual," are a single claim that ERC violated § 1692c(b). (ECF No. 1, Complaint, PgID 5.)

In the Sixth Circuit, relief under § 1692c is limited to "consumers" as defined by § 1692a(3) of the FDCPA. *Montgomery v. Huntington Bank*, 346 F. 3d 693, 696–97 (6th Cir. 2003). The language of § 1692c is centered on the consumer—§ 1692c(a) prevents debt collectors from communicating with a consumer at unusual times or places unless the consumer has given prior consent, and § 1692c(b) bars debt collectors from communicating with third parties without prior consent from the consumer. Other provisions of the FDCPA, such as § 1692d, bar certain conduct toward "any person," not just toward any "consumer." This difference reflects that "the primary purpose of section 1692c is to protect the *consumer's* privacy and employment . . . [s]o, it would be incongruous to permit a person other than the consumer to recover for a violation of this section." *West v. Costen*, 558 F. Supp. 564, 577 (W.D. W. Va. 1983). Thus, enforcement of § 1692c is limited to statutorily-defined consumers. *See Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541, 545 (E.D. Mich. 2009) ("[Section] 1692c, applying to "consumers," is more limited than other portions of the FDCPA which apply to "any person.").

The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). As a matter of law, a person is only "allegedly obligated" to pay a debt such that he or she is a consumer under the FDCPA when the debt collector specifically targets that person, by name, for the debt collection action, as in a case of mistaken identity. In *McDermott v. Randall S. Miller & Assocs.*, for instance, a mortgage servicing company and its law firm sent several letters to the plaintiff demanding payment on a mortgage on property that plaintiff had never owned and on which he had never taken a mortgage. 835 F. Supp. 2d 362, 366–68 (E.D. Mich. 2011). Although plaintiff was never actually obligated to pay the mortgage, the court found that he was a consumer under the FDCPA because the defendant sent him a written communication that, by demanding payment from plaintiff by name, alleged that plaintiff was obligated for the mortgage. *Id.* Similarly, in *Roe v. Roosen, Varchetti & Oliver*, the defendants submitted a writ of garnishment to the wrong Angela Roe's employer, which contained the social security number of the actual debtor but was under the plaintiff's name, which she happened to share with the debtor. No. 18-cv-13536, 2019 WL 2523589, at *1 (E.D. Mich. 2019). The court found that Angela Roe was allegedly obligated to pay the debt at issue because the writ was in her name and submitted to her employer. *Id.* at *5. The court also noted that "the legislative history of the FDCPA reveals that Congress was concerned with

cases of mistaken identity and debt collectors trying to recover from the wrong persons." *Id.*; *see also Bridge v. Ocwen Federal Bank*, 681 F. 3d 355, 361–62 (6th Cir. 2012) (analyzing this legislative history in the context of defining "debt collector"). No court has held that calling the wrong number is akin a case of mistaken identity where the debt collector alleges that the call recipient is obligated to pay a debt. *Cf. Wright*, 227 F. Supp. 3d at 1213 n. 26 (noting that plaintiff, who received automated calls looking for a third-party debtor, could only recover under § 1692d because "he could not possibly pursue an action under § 1692c").

Here, there is no dispute that Mr. Boozer was not actually obligated to pay the debt ERC was hired to collect. Plaintiff was also not allegedly obligated to pay the debt—ERC never asked for Mr. Boozer by name, never mentioned any debt to him, and never alleged that Mr. Boozer was obligated to pay any debt. Mr. Boozer is not a consumer as defined by the FDCPA. *Cf. Kaniewski* 678 F. Supp. 2d at 543–45 (plaintiff who received calls intended for different debtor not a consumer).

Mr. Boozer contends that he is a consumer because he was "allegedly obligated" to pay the debt. (ECF No. 25, Plaintiff's Response, PgID 303–04.) Plaintiff explains this argument as follows: "a reasonable jury could conclude that Plaintiff received multiple phone calls from Defendant after he told it that it was calling the wrong person…[which] suggests that Defendant repeatedly contacted Plaintiff to collect upon a debt owed by a third party **knowing** that Plaintiff did not

owe the debt" so "a reasonable jury could conclude that Defendant's calls constituted an allegation that Plaintiff was obligated to pay the debt." (*Id.*)

This argument is incorrect because ERC's conduct, even as described by Mr. Boozer in his deposition, does not support the inference that ERC was pressuring Mr. Boozer to pay Debtor's debt. ERC never mentioned that it was trying to collect on a debt, and never even identified itself as a debt collector. Mr. Boozer testified that ERC never identified itself at all, that the substance of the calls always involved looking for Debtor, and that the only thing he can remember about the voicemails was that ERC was looking for Debtor. (ECF No. 21-1, Boozer Dep., PgID 164, 166. 171–73, 182–83.) He testified that when he told ERC that he was not Debtor and that it was the wrong number, the representative would thank him, tell him that the number would be removed, and then the call would be over. (*Id.* at 182.) The only time he indicated that he even knew that ERC is a debt collector is when he said that he saved ERC's number under either Debtor's name or the name "debt collector." (*Id.* at 234–35.) The conduct alleged by Mr. Boozer—a debt collector repeatedly calling, asking for a different person, and then ending the call without mentioning any debt—does not give rise to any inference that the debt collector was alleging that the person receiving its calls owes a debt, much less a reasonable one. Mr. Boozer does not have standing to bring claims under § 1692c, and ERC is entitled to summary judgment on Mr. Boozer's § 1692c claims.

### b. § 1692d

Defendant ERC argues that it is entitled to summary judgment on Mr. Boozer's claims under § 1692d and 1692d(5) because "there is no evidence that ERC engaged in any harassing, oppressive or abusive conduct." (ECF No. 23, Motion for Summary Judgment, PgID 278.) This is a closer question than ERC admits, because Mr. Boozer's deposition testimony that he received ten to fifteen calls after he told ERC it had the wrong number is some evidence of harassing conduct. *Cf. Kayyal v. Enhanced Recovery Co., LLC*, No. 1:17-cv-02718 (N.D. Ill. 2019) (finding a jury question where parties disagree over whether defendant called "over 20 times" after being told it had wrong number).[3] Nevertheless, that evidence is insufficient as a matter of law to create a jury question under § 1692d. *Cf. Millsap v. CCB Credit Servs. Inc.*, No. 07-11915, 2008 WL 8511691, at *9 (E.D. Mich. 2008) (finding that plaintiff's deposition testimony was insufficient to

---

[3] Both *Kayyal* and the other recent case that Plaintiff points to in support of the argument that Mr. Boozer's deposition testimony creates a genuine dispute of material fact were decided in the Seventh Circuit, where there is precedent that "self-serving testimony by the plaintiff is enough to create a genuine dispute of material fact and that it is best left to the jury to determine the credibility of the testimony." *Kayyal* (citing *Marr v. Bank of Am., N.A.*, 662 F. 3d 963, 968 (7th Cir. 2011)). The Court was unable to find equally deferential precedent in the Sixth Circuit, where some corroboration or a lack of contradiction of the testimony seems to be required. *See, e.g., Niemi v. NHK Co., LTD*, 543 F. 3d 294, 299–300 (6th Cir. 2008) (finding that a self-serving affidavit was not "no evidence" when no other evidence directly contradicted the assertions in the affidavit).

meet the summary judgment standard where she was unable to "recall even the most basic details" of her allegation).

Section 1692d bars a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Subsection (5) of § 1692d establishes that "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, harass any person at the called number" is a violation of § 1692. *Id.* Plaintiffs bear the burden of showing a violation of § 1692d. *Pugliese*, 2010 WL 2632562, at *9. To prove a violation of this section, a plaintiff must "demonstrate an *intent* to annoy, harass or abuse." *Litt*, 146 F. Supp. 3d. at 872. Plaintiffs can demonstrate the requisite intent by showing tactics that are generally "intended to embarrass, upset, or frighten" and that are likely to cause "suffering and anguish." *Harvey v. Great Seneca Fin. Corp.*, 453 F. 3d 324, 330 (6th Cir. 2006).

Generally, the question of whether specific conduct amounts to harassment is reserved for the jury, but courts can dismiss claims where "the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Id.* In a case involving phone calls from collection agencies, courts analyze the volume of calls "along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct." *Pugliese*, 2010 WL 2632562, at *9. Where

the calls are to the actual debtor, and not to a wrong number, a large volume of calls is not enough to establish a violation of § 1692d. *See Litt*, 146 F. Supp. 3d at 873–874 (citing cases where 350 calls over eight months and 120 calls over a year were found not be harassment in support of finding that 213 calls, standing alone, did not violate § 1692d). If the plaintiff answered multiple calls in a single day, that is sufficient to establish harassment. *Lashbrook v. Portfolio Recovery Assocs., LLC*, No. 2:11-cv-15624, 2013 WL 4604281 at *6 (E.D. Mich. 2013).

It is a closer question whether multiple calls to a wrong number can violate § 1692d. At least one judge in this District has extended the rule that multiple calls without evidence of other abusive conduct is insufficient to establish a claim under § 1692d and 1692d(5) to situations where the recipient of the calls is not the actual debtor. *Williams v. Web Equity Holdings, LLC*, No. 2:13-cv-13723, 2014 WL 3845952, at *4 (E.D. Mich. 2014) (holding that five calls to debtor's father who shared debtor's name in a one-month period was not a violation of § 1692d(5) even when father always informed collector that it was calling the wrong Ernest Williams). Other courts outside the Sixth Circuit have found triable issues of fact where plaintiffs contend that they received multiple calls from debt collectors after they informed the debt collector that it had the wrong number. *See, e.g., Kayyal* at 6–8 (finding issue of fact where plaintiff claimed that she told defendant more than

25

twenty times that it had the wrong number and the parties' records did not agree on the number and dates of the calls).

Plaintiff relies heavily on one such case, *Brown v. I.C. Sys.*, to argue that, if a jury were to credit Mr. Boozer's testimony, that jury could also find that ERC harassed Mr. Boozer when it continued to call, knowing that it was a wrong number. No. 16 C 9784, 2019 WL 1281972 (N.D. Ill. 2019); (ECF No. 25, Plaintiff's Response, PgID 308–09.) In *Brown*, plaintiff alleged that defendant debt collection agency called her cell phone multiple times attempting to collect a debt from a third party. *Id.* at * 2. She said she usually hung up immediately, but she remembered speaking with a representative on the phone at least five times, each time telling the representative they had a wrong number. *Id.* She also testified that the representatives tried to get her to pay by threatening to garnish her wages and telling her that it could just take the money from her account with her Social Security number. *Id.* She reviewed the history on her phone and counted an estimated twenty calls from the defendant. *Id.* at *3. Her phone records showed that on October 3, 2014 she had a sixty-one second phone call with the defendant, and the defendant failed to produce a recording of this call. *Id.* at *4. Based on these facts, the Northern District of Illinois found that there was a genuine dispute of material fact on the question of when plaintiff told defendant that it had the wrong number because sixty-one seconds is "more than enough time for plaintiff

to tell defendant that she was not the person defendant was looking for and to stop calling." *Id.* at *11. It further found that twenty calls over two months "are not so few and far between that they cannot constitute a violation of § 1692d(5), at least under the circumstances of this case [where the jury could believe] that defendant knew or should have known, perhaps based on the October 3, 2014 phone call" that it had the wrong number. *Id.* at *12.

Here, Mr. Boozer's claim under § 1692d and 1692d(5) is insufficient as a matter of law because it rests on the otherwise unsupported factual allegations in his deposition and because eight to fifteen calls over two months, without more, do not amount conduct the natural consequence of which is to harass, oppress, or abuse a person. Mr. Boozer's deposition testimony, where he states that he had somewhere between two and four conversations with ERC and that he received ten to fifteen calls from ERC after the first conversation, is unsupported, indeed contradicted, by both his telephone records and ERC's records which show seven and ten unanswered calls, respectively, followed by one incoming call and one outgoing call that actually connected. Further, Mr. Boozer was unable to estimate even the month that he called ERC to tell it that he was not Debtor. (ECF No. 21-1, Boozer Dep., PgID 167–68.) When asked if it would surprise him that a call recording of Mr. Boozer telling ERC it had the wrong number took place in November of 2017, Mr. Boozer said that it would not surprise him and that he did

not know when the call took place. (*Id.* at 229–230.) Further, there is no additional evidence here like there was in *Brown*—there is no record of any phone calls that ERC failed to record, there are no allegations of threats to garnish wages or take money, there is not even an allegation that ERC informed Mr. Boozer that it was attempting to collect a debt. *Brown*, 2019 WL 1281972, at *2–4.

Even without discounting Mr. Boozer's testimony, the allegation that Mr. Boozer continued to receive calls from ERC after telling it that he was not Debtor is insufficient to establish a violation of § 1692d in this Circuit. In this case, as in *Williams*, Plaintiff is alleging that he received several calls from a debt collector after telling it that it had the wrong number. *Williams*, 2014 WL 3845952, at *4. In *Williams*, the plaintiff received five calls in one month; here, Mr. Boozer received between ten and fifteen calls over two months. *Id.* That is roughly the same volume of calls. So, just as in *Williams*, alleging roughly five calls a month after the caller was informed that it had a wrong number, absent any evidence of threatening messages or other harassment, is insufficient to state a claim under § 1692d. ERC is therefore entitled to summary judgment on Mr. Boozer's § 1692d claim.

### c. §§ 1692e, 1692f

Defendant ERC argues that Plaintiff's final two theories of FDCPA liability, under §§ 1692e, 1692e(10), and 1692f, lack merit because the fact that Mr. Boozer knew that ERC was attempting to reach a third-party debtor establishes that ERC

did not use any false or misleading representations or unfair or unconscionable means as a matter of law. (ECF No. 23, Motion for Summary Judgment, PgID 281–85.) The Court agrees.

Section 1692e bars the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and subsection (10) reiterates that "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer" is a violation of § 1692e. 15 U.S.C. § 1692e, 1692e(10). Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Conduct alleged to be a violation of the FDCPA is evaluated against the "least sophisticated consumer" standard. *Barany-Snyder v. Weiner*, 539 F. 3d 327, 333 (6th Cir. 2008). Under this standard, the court asks whether an unsophisticated consumer who carefully considers the contents of a communication would be misled or unduly pressured by it. *See Roe*, 2019 WL 2523589, at *4. The result is that all recipients of debt-related communications are protected, whether they are gullible or shrewd, while debt collectors are protected from liability from "bizarre or idiosyncratic interpretations." *Barany-Snyder* 539 F. 3d at 333. This is an objective test. *Id.*

When a communication makes clear to the recipient that the recipient is not the intended target of the debt collection effort, that communication is not

deceptive nor unfair and does not violate §§ 1692e, 1692e(10) or 1692f. *See Kaniewski*, 678 F. Supp. 2d. at 546 (finding no violation of §§ 1692e and 1692f when there was no dispute that Plaintiff knew that Defendant was not trying to collect a debt from him). In *Kujawa v. Palisades Collection, LLC*, a debt collector sent plaintiff, the wrong James J. Kujawa, a release of garnishment and notice of judgment lien. 614 F. Supp. 788, 792 (E.D. Mich. 2008). These communications contained the correct James J. Kujawa's social security number and referenced debt which the recipient had never owed. *Id.* That, the court held, was enough to inform even the least sophisticated consumer that the recipient of the communication was not the intended target of the debt collection effort, which meant that the debt collector was not liable under § 1692e. *Id.* This reasoning was endorsed in *Kaniewski*, where a debt collector's calls did not violate § 1692e or § 1692f because the plaintiff knew the debt collector was not attempting to collect a debt from him. 678 F. Supp. 2d at 546.[4]

ERC is entitled to summary judgment on Mr. Boozer's claims under §§ 1692e and 1692f because all of its communications to Mr. Boozer made clear that Mr. Boozer was not the intended target of its collection efforts. According to

_____

[4] In *Roe*, the court distinguished both *Kaniewski* and *Kujawa* and declined to grant defendant's motion to dismiss on the basis that the writ of garnishment it submitted to plaintiff's employer had the correct debtor's, not the plaintiff's, social security number on it. *Roe*, 2019 WL 2523589, at *4. The reasoning, however, was that there had not been full factual development because discovery had not been completed. *Id.* Discovery has been completed in this case.

30

Mr. Boozer's testimony, the only thing that ERC affirmatively represented to him was that ERC was looking for Debtor. (ECF No. 21-1, Boozer Dep., PgID 164, 166, 171–73.) He testified that he knew from the very beginning that Debtor was the subject of the call. (*Id.* at PgID 164, 166, 171–73.) Mr. Boozer also testified that he did not actually know that it was ERC calling him until he called back (*Id.* at PgID 170.) ERC clearly communicated that Mr. Boozer is not the target of the debt collection effort, and therefore ERC did not violate §§ 1692e and 1692f. *See Kaniewski*, 678 F. Supp. 2d. at 546.

Plaintiff argues that ERC's continued calls to Mr. Boozer after it learned that it had the wrong number constituted an attempt to "extract payment" from Mr. Boozer on "a debt that he did not owe." (ECF No. 25, Plaintiff's Response, PgID 313.) Plaintiff cites two cases in support of this argument, *Brown* and *Kayyal*. (*Id.* at PgID 314; ECF No. 28, Plaintiff's Motion to Submit Supplemental Authority, PgID 1490.) In *Brown*, the plaintiff's §§ 1692e and 1692f claims were supported by her testimony that the defendant's representatives threatened to garnish her wages or take money out of her bank account after learning that she was not the intended debtor. *Brown*, 2019 WL 1281972, at *13–19. In *Kayyal*, the plaintiff testified that the defendant's representative told plaintiff that plaintiff herself owed a debt, and the court held that a jury would not be unreasonable "in concluding that an unsophisticated consumer could construe a series of 40-plus phone calls from a

debt collector as an assertion that the consumer owed a debt." *Kayyal* at 9. This case is clearly distinguishable from *Brown* and *Kayyal* because Mr. Boozer was never told that he owed a debt, was certainly never threatened with garnishment or the taking of funds from his bank account, and was never told that the reason for all the calls was that Debtor owed a debt. Finally, Mr. Boozer's testimony that ERC continued to call him after learning it had the wrong number is contradicted by the rest of the record. ERC is entitled to judgment as a matter of law on Mr. Boozer's §§ 1692e and 1692f claims.

### C. Michigan Occupational Code

Plaintiff's complaint also alleges that Defendant's conduct violated three sections of the Michigan Occupational Code (MOC). (ECF No. 1, Complaint, PgID 7–9.) Specifically, Mr. Boozer brings a claim under Mich. Comp. L. § 339.915(f)(ii), which prohibits "[m]isrepresenting in a communication with a debtor...[t]he legal rights of the creditor or debtor," a claim under Mich. Comp. L. § 339.915(n) which prohibits "[u]sing a harassing, oppressive or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places," and a claim under Mich. Comp. L. § 339.915(q) which bans "[f]ailing to implement a procedure designed to prevent a violation by an employee." (*Id.*) These claims are based on the same underlying conduct as the FDCPA claims, and,

because the state law provisions "mirror" provisions in the FDCPA this Court can dispose of the state law claims in the same way. *See Millsap* at *10 (granting summary judgment on parallel state law claims after granting summary judgment on FDCPA claims).

Section 339.915(f)(ii) mirrors § 1692c of the FDCPA because both sections limit their restrictions to communications between collectors and either "debtors" (MOC) or "consumers" (FDCPA). Further, Mich. Comp. L. § 339.901(f) defines "debtor" as "an individual who is obligated or allegedly obligated to pay a debt." This is identical to the FDCPA definition of "consumer." Therefore, the previous reasoning that explains why Mr. Boozer is not a consumer applies here as well, and Mr. Boozer does not have standing to bring this claim.

Similarly, § 339.915(n) uses the "unusual time or place" language from 15 U.S.C. § 1692c(a) as well as the "causing a telephone to ring or engaging a[ny] person in telephone conversation" language from 15 U.S.C. § 1692d(5) while echoing § 1692d's general prohibition on harassing, oppressive or abusive behavior. Mich. Comp. L. § 339.915(n). These similarities suggest that this law bans the same type of conduct addressed by those provisions of the FDCPA, and therefore the analysis regarding § 1692d above explains why ERC did not violate Mich. Comp. L. § 339.915(n). *See generally, Saltzman v. I.C. Sys.*, No. 09-10096, 2009 WL 3190359, at *9 (E.D. Mich. 2009) (granting summary judgment on MOC

claims that have "counterpart violations in the FDCPA" when granting summary judgment on those counterpart FDCPA claims).

Finally, Mich. Comp. L. § 339.915(q), which imposes liability when debt collectors fail to implement procedures designed to prevent employees from violating the MOC, does not have a parallel FDCPA provision. *Id.* ERC has provided evidence that it has a policy of training its collectors on the requirements of the FDCPA and parallel state laws and that it has a policy of removing numbers from its database when it learns they are wrong. (ECF No. 20-3, Landoll Dec., PgID 127–28; ECF No. 20-5, Landoll Dec. Exhibit 2, PgID 138–39.) Plaintiff tries to dispute that claim by pointing to the facts of this case, where Mr. Boozer insists that ERC continued to call after learning that it had a wrong number. (ECF No. 25, Plaintiff's Response, PgID 297.) This conclusory assertion that some defect in ERC's procedures must exist based on the other allegations in this case is insufficient to establish a genuine dispute of material fact on this claim. *Cf. Saltzman*, 2009 WL 3190359, at *10. Plaintiff seems to have recognized that reality as well, because he does not address § 339.915(q) in his argument in his Response. (*See* ECF No. 25, Plaintiff's Response, PgID 315–16.) ERC is entitled to summary judgment on all Mr. Boozer's state law claims.

## IV.    CONCLUSION

Because the record establishes that there is no genuine dispute of material fact and ERC is entitled to judgment as a matter of law, the Court GRANTS Defendant Enhanced Recovery Company, LLC's Motion for Summary Judgment and DISMISSES Plaintiff Ricardo Boozer's Complaint.

IT IS SO ORDERED.

Dated:   OCT 1 8 2019

Paul D. Borman
United States District Judge